UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL KINZLER,

        Plaintiff,                                    Case No. 1:11-cv-39

v.                                                   HON. JANET T. NEFF

R&L CARRIERS SHARED SERVICES, LLC,

        Defendant.
_____/

**OPINION**

In this removed employment case, Plaintiff Michael Kinzler alleges that Defendant R&L Carriers Shared Services, LLC, his former employer, discriminated against him because of his age. Now pending before the Court is Defendant's September 21, 2012 Motion for Summary Judgment (Dkt 76). Plaintiff filed a response to Defendant's motion (Dkt 81), and Defendant filed a reply (Dkt 78). Having conducted a Pre-Motion Conference on this matter and having now fully considered the parties' written briefs, stipulated statements of fact and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons that follow, the Court concludes that Defendant's motion is properly denied.

**I. BACKGROUND**

On June 28, 1993, Defendant hired Plaintiff, then 39 years old, as a tractor mechanic at Defendant's Kalamazoo, Michigan facility, where he worked on forklifts, tractors, and trailers

(SMF[1] ¶ 32). Plaintiff was the only mechanic at the facility for a period of time and, as such, was the only person performing the repairs of the equipment (*id.* ¶ 33). On March 7, 1994, Defendant promoted Plaintiff to a Class A Mechanic (the highest line mechanic position) (*id.* ¶ 34). On February 15, 1995, Defendant promoted Plaintiff to Maintenance Supervisor (*id.* ¶ 34).

The Maintenance Department has overall responsibility for the repair and upkeep of the equipment, including forklifts, trucks, trailers, tractors, air compressors, propane systems, and fuel pumps (SMF ¶ 14). Plaintiff and all the mechanics were required to follow and comply with certain protocols and procedures set forth in the Shop Manual (*id.* ¶ 15). As Maintenance Supervisor, Plaintiff was required to closely monitor the work of the other mechanics, meet certain reporting requirements, and undertake repairs of equipment (*id.* ¶ 16). One of the critical daily duties of the Maintenance Supervisors was to "report any problems and units down to Regional Manager each morning" (*id.* ¶ 17). Plaintiff, as the Maintenance Supervisor, reported directly to Rick Phelps, the Northern Field Maintenance Manager; Phelps reported to the Regional Maintenance Manager; and the Regional Maintenance Manager reported to Brett Hollingsworth, Defendant's Maintenance Director (*id.* ¶ 9).

In January 1999, the Kalamazoo facility was moved to Battle Creek, Michigan (SMF ¶ 35). Dusty Ruthven was the Terminal Manager of the Battle Creek facility at that time (Ruthven Dep. at 11). According to Plaintiff, Ruthven opined, at some point after 2006, that the shop was "too old" and needed "new blood" (*id.* ¶ 10; Kinzler Dep. at 149). Ruthven testified that he was not involved

---

[1] Defendant's Statement of Material Facts (SMF) (Dkt 77), Plaintiff's Response to Defendant's Statement of Material Facts (Dkt 80).

in recommending any discipline of the mechanics in the Battle Creek facility, that his involvement as Terminal Manager was as a "messenger" (Ruthven Dep. at 28).

Effective April 27, 2009, Ed Bradley became the Regional Maintenance Manager (SMF ¶ 9; Dkt 82, Ex. 2). Bradley and Phelps visited the Battle Creek facility from time to time to conduct inspections and audits involving the operation of the Maintenance Department (SMF ¶ 10). Phelps testified that Ruthven was "probably ... the only person" from whom he received complaints about Plaintiff's work performance (Phelps Dep. at 111, 114).

On May 19, 2009, a written warning was issued to Plaintiff (initiated by Phelps and signed by Bradley), stating that "Mike is not returning cores on daily basis . . . Mike also needs to report to TM [Terminal Manager Ruthven] daily status of equipment via email. If this continues it will lead to futher [sic] disciplinary action including termination" (Dkt 82, Ex. 3).

On July 15, 2009, Plaintiff was issued a "verbal warning ... [f]or work performance," specifically, that "Mike needs to be working on forklifts and he also needs to make sure that all work is done in a timely manner" (Dkt 82, Ex. 4). Also on July 15, 2009, Bradley held a meeting with the entire Maintenance Department to underscore the need for team work and working together effectively (*id.* ¶ 50).

In mid-August 2009, Defendant began running an advertisement for Plaintiff's position (Dkt 82, Ex. 15), opining that it ran the advertisement "to send a very strong message to Plaintiff that his performance must improve" (Dkt 76 at 16, citing Ex. 4, Hollingsworth Dep. at 40-41). Phelps testified that another mechanic in the facility, Greg Born, talked with him about the advertisement, although Phelps did not believe he "went into any detail with [Born] on it" (Phelps Dep. at 83-84).

On September 1, 2009, Defendant issued Plaintiff a three-day suspension for "falsifying company documents by failing to report an out-of-service unit in a timely manner" (Dkt 6, Amended Answer ¶ 12; Dkt 82, Ex. 7). On October 2, 2009, Defendant terminated Plaintiff's employment for "Failure to follow instruction from direct supervisors (Rick Phelps & Ed Bradley)" and "Poor work performance" (Dkt 1-1, Compl. ¶ 8; Dkt 82, Ex. 8). Plaintiff testified that when he was advised he was being terminated, the only persons present were Phelps and Ruthven (Kinzler Dep. at 142).

In November 2010, Plaintiff filed a complaint in state court, alleging age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.* and Michigan's Elliott-Larsen Civil Rights Act (ELCRA), MICH. COMP. LAWS § 37.2202 *et seq.* (Dkt 1-1, Compl. ¶ 22). Plaintiff alleges that Defendant's true reason for terminating his employment was his age, then 55 years old. Plaintiff alleges in his Complaint that Defendant had been "unjustly criticizing his work" and that the reason Defendant cited for terminating his employment—Plaintiff's failure to put a truck on a "down list"—was a pretext for age discrimination (*id.* ¶¶ 11-12, 15). Plaintiff further contends that Defendant replaced him with a person in his 30s, whom Plaintiff alleges was not even qualified for the position inasmuch as he did not have a Class A mechanic's license (*id.* ¶ 17). Defendant admits "only that it terminated Plaintiff's employment for failure to follow instruction from direct supervisors and poor work performance" (Dkt 6, Amended Answer, ¶ 15).

On January 11, 2011, Defendant removed the case to this Court, citing both federal-question and diversity jurisdiction grounds (Dkt 1, Notice of Removal ¶¶ 5-8). Following discovery, this Court conducted a pre-motion conference in February 2012, deferring the briefing on Defendant's proposed dispositive motion until after the parties completed their attempts to mediate a resolution of this case. In July 2012, having been informed that Voluntary Facilitative Mediation was

4

ultimately unsuccessful, the Court issued a briefing schedule, and the parties filed their motion papers in September 2012 (Dkts 76-84).

## II. ANALYSIS

**A.  Motion Standard**

A motion for summary judgment is properly granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.  Discussion**

Plaintiff presents his claim of age discrimination under both federal and state law.  The ADEA provides that it shall be unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against an individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the ELCRA prohibits "discriminat[ing] against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age." MICH. COMP. LAWS § 37.2202(1)(a).

"'The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009) (quoting *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 153 (2000)). An age discrimination claim may be proved through either direct or circumstantial evidence. *Geiger*, 579 F.3d at 620, 626; *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004); *Town v. Michigan Bell Tel. Co.*, 568 N.W.2d 64, 67-68 (Mich. 1997). Plaintiff concedes that he is not pursuing a direct-evidence age discrimination claim (Dkt 81, Resp. ¶ 1).

**1.      Prima Facie Case**

To state a prima facie case on a disparate treatment theory using circumstantial evidence, a plaintiff must satisfy the four prongs of the well-known test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973): "(1) he was at least 40 years old at the time of the alleged discrimination; (2) he was subjected to an adverse employment action; (3) he was otherwise qualified for the position; and (4) he was replaced by a younger worker." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 521 (6th Cir. 2008) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007)). *See also Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (opining that "the precise requirements of a prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic'") (quotation omitted); *see also Blizzard v. Marion Technical Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Swierkiewicz* to describe the fourth prong as "circumstances that support an inference of discrimination"). The same evidentiary burdens apply in cases brought under Michigan's Elliott-Larsen Act. *Hughes v. Gen. Motors Corp.*, 212 F. App'x 497, 501, 2007 WL 62614, at *3 (6th Cir. 2007); *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 193 (Mich. 2003).

      a.     *Protected Class & Adverse Employment Action Prongs*

The parties do not dispute either that Plaintiff, age 55 at the time of his termination, is a member of the protected class, or that his termination constitutes an adverse employment action. Thus, the first two prongs of Plaintiff's prima facie case are satisfied. Defendant disputes whether Plaintiff has satisfied the remaining two prongs.

      b.     *Qualification Prong*

In *Wexler v. White's Fine Furniture*, Inc., 317 F.3d 564, 575 (6th Cir. 2003), the Sixth Circuit Court of Appeals sitting en banc "explicitly set forth" what is required for a plaintiff to satisfy the qualification prong of the prima facie test. Specifically, the Court opined that "[a]t the prima facie stage, a court should focus on a plaintiff's objective qualifications to determine whether he or she is qualified for the relevant job." *Id.* "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field. Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 575-76. A court may "not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when it is analyzing the plaintiff's prima facie case." *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 (6th Cir. 2010) (citing *Wexler, supra*); *see also Bailey v. Papa John's USA, Inc.*, 211 F. App'x 417, 420 (6th Cir. 2006) (explaining that a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case as this would bypass the burden-shifting analysis).

Here, Plaintiff argues that he is "certainly qualified for the job, as he worked as the mechanic shop foreman since 1995" and he is "licensed by the State of Michigan as a mechanic" (Dkt 82 at 16). Defendant contends that Plaintiff should be considered unqualified because of his failure to meet his supervisor's legitimate expectations (Dkt 76 at 29). Based on the case law set forth above, Plaintiff correctly responds that the Court "should not use the defendant's performance criticism of Mr. Kinzler, which Mr. Kinzler contests, as grounds that Mr. Kinzler was not qualified for the job" (Dkt 82 at 16).

In this case, looking at the evidence in the light most favorable to Plaintiff and independent of Defendant's proffered nondiscriminatory reason, the Court determines that Plaintiff possessed the minimum objective qualifications for employment in his field. *See, e.g., Geiger*, 579 F.3d at 624 (finding plaintiff was qualified for the job where he had already served in that position, had 27 years experience, and had received positive reviews); *Hale v. ABF Freight Sys., Inc.*, No. 11-6440, 2012 WL 5259156, at *8 (6th Cir. Oct. 25, 2012) (declining to consider the defendant-employer's "string of documented issues with [the plaintiff-employee's] job performance" because "[w]e rejected this type of argument in *Wexler*")). Therefore, the qualification prong is also satisfied.

    c.    *Replaced Prong*

To demonstrate the final prong, Plaintiff may show that his employer replaced him with someone outside the protected class. *See, e.g., Oliver v. St. Luke's Dialysis LLC*, No. 11-3980, 2012 WL 3156444, at *2 (6th Cir. Aug. 6, 2012) (citing *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008)).

Plaintiff has demonstrated that Defendant assigned Plaintiff's duties to Born, then 33 years old, a fact that Defendant does not dispute (Dkt 82, Ex. 9 at ¶ 1). Born testified that "they asked

8

everyone in the shop if anyone would be interested in the job position," that Born said he would be "interested in doing it" and "then [Phelps] got back with me and said that I got the job" (Born Dep. at 44). "A person is replaced ... when another employee is ... reassigned to perform the plaintiff's duties." *Grosjean v. First Energy Corp.*, 349 F.3d 340, 336 (6th Cir. 2003) (quoting *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990)). Born (d/o/b 1/17/1976) is "substantially younger" than Plaintiff. Therefore, Plaintiff has satisfied this last prong of his prima facie case, too.

**2.      Legitimate, Nondiscriminatory Reason**

Once a plaintiff satisfies his prima facie burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Schoonmaker*, 595 F.3d at 264 (citing *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008)). This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)); *Bd. of Trustees of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n. 2 (1978) (noting that "the employer's burden is satisfied if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons"). The burden of persuasion remains on the ADEA plaintiffs at all times to demonstrate "'that age was the 'but-for' cause of their employer's adverse action.'" *Geiger*, 579 F.3d at 620 (quoting *Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___; 129 S. Ct. 2343, 2351 n.4 (2009)).

Here, Defendant asserts that it terminated Plaintiff because of his "failure to follow instruction from direct supervisors and poor work performance" (Dkt 6, Amended Answer, ¶ 15). Defendant has supported its assertion by offering admissible evidence in the record, including the exhibits identified *supra,* delineating the written and verbal warnings to Plaintiff since Bradley's

April 27, 2009 promotion to Regional Maintenance Manager. For this reason, Defendant has satisfied its burden of production.

**3.     Pretext**

The burden thus shifts back to Plaintiff to produce enough evidence to allow a reasonable jury to infer that Defendant's proffered reason is pretextual and that he was actually fired because of his age. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler,* 317 F.3d at 576 (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). In other words, Plaintiff must "produce sufficient evidence from which the jury could reasonably reject the defendant's explanation and infer that the defendants ... did not honestly believe in the proffered non-discriminatory reason for its adverse employment action." *Back v. Nestle USA, Inc.*, 694 F.3d 571, 579 (6th Cir. 2012) (quoting *Braithwaite v. The Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

While Plaintiff's own assessment of his work performance is not alone evidence demonstrating that the cited performance issues did not motivate his termination, *see Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (affirming summary judgment where the plaintiff "presented nothing more than his own subjective opinion to justify his allegations"), Plaintiff has not proffered merely subjective opinions but challenges the factual basis purportedly supporting his discipline and eventual termination. First, Plaintiff points to his long work history—and promotions—as evidence of his satisfactory work performance. Second, regarding the May 19, 2009 written warning, which stated that "Mike is not returning cores on daily basis,"

Plaintiff testified that the warning was unwarranted because "[his] part was done" as the cores were "wrapped and ready to go" and someone else merely failed to pick them up (Kinzler Dep. at 106).

Similarly, regarding the July 15, 2009 verbal warning that "Mike needs to be working on forklifts," Plaintiff testified that he "was getting the forklifts down off the dock and cleaning them out, making sure they weren't overheating" (Kinzler Dep. at 116). Plaintiff opined that he would, in fact, "get as many as [he] could at the end of my shift" (*id.*). Phelps similarly testified that he knew from the productivity reports that Plaintiff worked on forklifts (Phelps Dep. at 71).

Plaintiff also asserts that the September 2009 suspension for failing to timely report an out-of-service unit had a "false and trivial" basis inasmuch as he "did not put the truck in question on a down truck list because he had not yet checked it out to determine if it had mechanical problems—and no one specifically informed him of this" (Dkt 82 at 21, citing Kinzler Dep at pp. 126-133). Plaintiff opines that "[c]ommunication about numerous trucks by drivers is not always perfect" (Dkt 82 at 21). Phelps, in turn, testified that Ruthven gave him the information that formed the basis for the suspension (Phelps Dep. at 72-73). However, Ruthven testified that he only "assumed" but did not in fact know if Plaintiff knew the truck had mechanical problems when he did not put it on a down truck list (Ruthven Dep. at 70-75). Phelps could not recall whether anyone told him Plaintiff knew the truck was down (Phelps Dep. at 127).

Regarding the October 2, 2009 incident that purportedly served as the catalyst for Plaintiff's termination, the broken forklift, Plaintiff asserts that this incident also has no basis in fact. Phelps testified that he was informed that Plaintiff "refused" to perform forklift repairs (Phelps Dep. at 66, 68; Dkt 82, Ex. 20), but Plaintiff testified that he could not make the repair in question because "we didn't have all the parts to make the repair" (Kinzler Dep. at 140). Although Born testified that he

11

repaired the forklift (Born Dep. at 37-39), Kinzler testified that Born merely "gerrymandered" the repair (Kinzler Dep. at 141).

Last, as additional evidence of pretext for his discrepant discipline and abrupt termination, Plaintiff points to the post-2006 comments of Terminal Manager Ruthven that the shop was "too old" and needed "new blood" (Dkt 82 at 30). Statements allegedly showing an employer's age bias are to be evaluated by considering "whether the comments were made by a decision maker or by an agent within the scope of his employment; whether they were related to the decision-making process; whether they were more than merely vague, ambiguous, or isolated remarks; and whether they were proximate in time to the act of termination." *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994). Here, comments by Ruthven, Phelps' "messenger," while not direct evidence, nonetheless support the inference of age-based discrimination. The Sixth Circuit has held that "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009). "[I]solated discriminatory remark[s]... made by individuals who did not independently have the authority or did not directly exercise their authority to fire the plaintiff, but who nevertheless played a meaningful role in the decision to terminate the plaintiff" are relevant. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-55 (6th Cir. 1998); *see also Brooks v. Davey Tree Expert Co.*, 478 F. App'x 934, 944 (6th Cir. 2012) (relying on *Ercegovich*).

In sum, the record, taken together and viewed in the light most favorable to Plaintiff, would allow a reasonable jury to disbelieve the reasons given for Plaintiff's termination and infer that Plaintiff was instead terminated because of his age. While the evidence does not require such a conclusion, all that is required to survive summary judgment is sufficient evidence to permit a

reasonable trier of fact "to infer the ultimate fact of intentional discrimination." *See Hale, supra* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Therefore, Plaintiff has demonstrated a genuine dispute over whether Defendant's proffered justification was pretext for age discrimination, and, in sum, Plaintiff has submitted sufficient evidence to survive summary judgment.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Dkt 76) is properly DENIED. An Order will be entered consistent with this Opinion.

DATED: December 11, 2012            /s/ Janet T. Neff
                                    JANET T. NEFF
                                    United States District Judge